## ANDREWS *vs.* HIS CREDITORS.

*APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW-ORLEANS.*

Contracts entered into in other states, as it relates to their validity, and the capacity of the contracting parties, are to be tested in this state, by the law of the place where they are made.

So, contracts made in another state, in accordance with its laws, will not be declared null by our courts, because such contracts would not be valid according to the laws of Louisiana. They will be enforced here as regards the parties to them, when they are valid where made.

But where a *debtor makes contracts and transfers of his property, to certain* of his creditors in preference to others, in another state, which are not deemed fraudulent in regard to other creditors, by its laws, and comes to Louisiana, where he is arrested by a creditor from that state, and claims the benefit of our insolvent laws : *Held,* that his case must be governed by the provisions of these laws, which grant a *discharge* to the debtor, who is not convicted of fraud. Such contracts and transfers being deemed in fraud of creditors by our insolvent laws, will be so declared by our courts, and their protection denied to the insolvent.

This is a case of insolvency. The ceding debtor is a resident of Mobile, in the state of Alabama, and was recently engaged in a large mercantile and exchange business there.

Some time in the month of April, 1837, the insolvent debtor left Mobile, and came to New-Orleans, as it is alleged, with a view to leave immediately for the North, and to defraud a portion of his creditors.

Several creditors from Mobile pursued, and arrested him in New-Orleans, where he was imprisoned.

On the 25th April, he filed his schedule and petition in the Parish Court, praying for the benefit of the insolvent laws of 1808, relating to debtors in actual custody and confinement.

The Parish Court made an order, requiring a meeting of the creditors of the insolvent, on the 18th of May, 1837, and

to show cause why he should not be discharged according to law.

On the day appointed, the Planters' and Merchants' Bank of Mobile, and some other creditors from Alabama, made opposition, and filed charges and suggestions of fraud, committed in sundry acts and transactions of the insolvent in Alabama, and of endeavoring to abscond and leave Mobile and New-Orleans for the North, in a clandestine manner, with a view of defrauding his creditors. They oppose his release and discharge, and likewise his being allowed the benefit of the insolvent laws of Louisiana. They pray that these suggestions and charges of fraud be tried by a jury, and that the insolvent be remanded to prison.

The insolvent pleaded a general denial, and also prayed a trial by jury in a summary way, and that he be released and discharged from imprisonment.

Upon these pleadings and issues the case was tried by a jury.

Evidence was produced on both sides, touching the transactions and conduct of the insolvent in Alabama, within the three months immediately preceding his insolvency, in relation to his creditors. It was shown, he had made large transfers of property and assets to several of his creditors, while others were left unpaid, and without any additional security. It also appeared, that the laws of Alabama permitted a debtor, while in the possession of his property, to transfer, and secure any creditor he chose in preference to others.

There was evidence offered, to show that the insolvent was absconding when he came here, and was arrested; and that he had taken passage, and placed his baggage on board a steam-boat, bound up the country, and was going off with large sums of money.

The opposing creditors had large claims against the insolvent, that of the Planters' and Merchants' Bank of Mobile, amounting to more than three hundred and fifty thousand dollars.

The principal point in controversy arises from the conflict of laws, and in determining whether the law of Alabama or of Louisiana, shall govern this case.

The transactions and transfers of property and other assets, to some creditors in preference of others, complained of, took place in Alabama, and are not deemed fraudulent by her laws. The insolvent, however, seeks the benefit of the insolvent laws of Louisiana, which, if obtained, not only discharge him from arrest and imprisonment, but *release* him from his debts, by executing an assignment of his remaining property.

The parish judge refused to instruct the jury, as required by the counsel for the opposing creditors, but charged them, that if by the laws of Alabama, the acts and conduct of the insolvent were not fraudulent, there could be no obstacle to his obtaining the benefit of the insolvent laws of this state. See the charge of the judge, as set out in the opinion of the court, which follows.

The jury acquitted the insolvent, and from judgment discharging him, the opposing creditors appealed.

*Roselius*, for the opposing creditors, contended, that the insolvent is expressly excluded from the benefit of the insolvent laws of this state, by the 17th section of the act of 1808, because it is admitted and proved, that he assigned and transferred, partly in trust for himself, and to give an undue preference to some of his creditors to the prejudice of others, real property and other assets, to the amount of eight hundred and sixty-three thousand four hundred and forty-eight dollars ; and all this was done within a few days before his arrest, in contemplation of his insolvency, and application for the relief of the insolvent laws, should he be imprisoned. In such cases these laws expressly exclude the insolvent from their benefit, when he is charged with fraud. 1 *Moreau's Digest*, 572.

2. The insolvent seeks his remedy by invoking the insolvent laws of Louisiana, and he must be governed by the *lex fori*.

He must comply with all their conditions, to be entitled to <span>EASTERN DIST.</span>
the benefits they afford.    *Story's Conflict of Laws, page* 468, <span>*Jan.* 1858.</span>
*et seq.*    11 *Martin,* 730.

3. The acts charged as fraudulent, are considered in fraud <span>ANDREWS *vs.* HIS CREDITORS.</span>
of creditors by our laws, the benefit of which the debtor seeks.
They are to be considered as fraudulent, whether committed
in Alabama or Louisiana.    They are deemed fraudulent by
the common law.    2 *Kent's Commentaries,* 422.    5 *Cowen's
Reports,* 547, 566, 580.    14 *Johnson,* 464.

4. The verdict of the jury is not entitled to weight, because
of the erroneous charge of the judge, and the reluctance of
juries generally to convict an insolvent of fraud, however
clearly it may be established.    This court has already had
occasion to reverse three verdicts of acquittal, on charges of
fraud, out of four.    2 *Kent's Commentaries,* 419.    1 *Louisiana
Reports,* 174.    4 *Ibid.,* 198.    7 *Ibid.,* 574.    10 *Ibid.,* 37.

*Grymes, Slidell* and *Lockett,* for the insolvent, insisted in
his defence, that the acts, transfers and assignments which
he made, and charged to be fraudulent in this case, took
place in the state of Alabama, and were permitted by the
laws of that state.    The laws of Alabama were cited and
referred to, as the rule of decision which must govern the
case.

2. The acts and transactions of the insolvent, which took
place in the state of Alabama, and which are not considered
fraudulent there, and not being declared in fraud of creditors
by the laws of that state, cannot be considered as an obstacle
to his being admitted to all the privileges and benefits of the
insolvent laws of Louisiana.

3. If the acts and conduct of the insolvent were permitted
by the laws of his domicil, and being considered perfectly
legal and free from all fraud there, they must be so construed
here.    A different construction would change the nature of
transactions and contracts, and make that which was done
honestly and in good faith, dishonest and fraudulent.

4. The law of the place where contracts and transactions are
entered into, must govern in determining their character and

effect. This principle is well established in the jurisprudence of this state, and of all the states in the Union.

*Barton*, for the opposing creditors.

1. The *lex fori*, or law of Louisiana, is the law of the whole case.

The doctrine of the *lex loci contractus*, in which a contract is to be expounded by the law of the place where it was made, is not a principle of international obligation, but results from the comity of nations : is never enforced at the *lex fori*, against the interest and policy of the state. See Story's Conflict, and authorities there cited, Olivier *vs.* Townes, 2 *Martin, N. S.*, 73. Saul *vs.* His Creditors, 5 *Martin, N. S.*, 587, 596.

Another principle bearing on this branch of the case is, that the laws of every state have an extra territorial operation upon all contracts sought to be enforced at its forum, which originated in or are defeated by acts *male fide*, or *malum in se*. The principle settled in Hiel's case was, that a a debt originating in France by fraud or theft, was not divested of its original turpitude, by being merged in a judgment debt here, and the debtor was, on that account, debarred of the benefit of the law, (insolvent laws) ; and it cannot be doubted that the principle of that case, applies as well to debts *lost* by fraud as to those *originating* in fraud. The *gain* to the debt and the *loss* to the creditor, are the same in each, etc. etc. 4 *Louisiana Reports*, 55.

But the *lex loci* has no application here, unless we confound *rights* with *remedies*. What *contract* is this court *sitting* to expound for which the Alabama law is to be invoked ? The *contract* we seek to enforce, is a debt due by the insolvent to the Planters' and Merchants' Bank of Mobile. The court is not asked to expound *that*, for the debt *itself* stands *confessed upon the record*, and all the bank is asking of this forum, is a *remedy* for its collection. The insolvent resists this *remedy* by seeking a *cross remedy* (not a *right*) for himself. If he obtains that *remedy*, he not only deprives the bank of its *remedy*, but *annihilates the right itself*. The con-

troversy then is wholly about *remedies*, and instead of being called upon to *expound contracts*, the court is called upon to *expound the law—the law of the remedy*, and surely it is not to be disputed, but that the *lex fori* is the *law of the remedy*.

The courts of Louisiana can administer no *remedies* but such as attach to this jurisdiction, nor establish discriminations between *residents* and *non-residents*, unless those discriminations exist in the law. Such a discrimination did indeed once exist ; a *non-resident* was *expressly excluded* from the benefits of the Louisiana law of insolvency, and this fearful exclusion endured for fourteen years.

This provision of the act of 1805, was repealed in 1822. 1 *Moreau's Dig.*, 575. The repealing act attempted no distinguishing exception in favor of non-residents. It simply removed an existing *disability*. It virtually proclaimed to the non-resident insolvent in actual custody, " if you can comply with those terms and requisitions which we exact of *every one of our own citizens*, in like circumstances, before we extend to them the benefit of our insolvent laws, your *non-residence* shall not deprive you of them.

The insolvent seeks the benefits both of the laws of Louisiana and Alabama, and claims exemption from the *burdens* of both. These laws are, in some important particulars, based upon antagonist principles. The Alabama law tolerates preferences given by the debtor to one or more creditors over others, provided it be done without fraud, but as some recompense to the deferred creditor, it subjects the future acquisitions of the debtor to the discharge of all the precedent debts. The Louisiana law, on the contrary, reprobates all preferences whatever, but as a recompense to the debtor, liberates his future acquisitions by spunging his precedent debts, *provided* he honestly surrenders to his creditors, *en masse*, all the assets he had at the time of his failure. Clearly then, the judgment of the Parish Court, discharging him from imprisonment and *all his debts*, awards to him benefits which no citizen of Alabama could obtain from the courts of that state, and which no citizen of Louisiana could obtain

EASTERN DIST. in the courts of this state, upon the facts patent upon the
*Jan. 1838.* record.

ANDREWS         All bankrupt laws are violent invasions of creditors' rights,
*vs.*
HIS CREDITORS. as all laws must be which extinguish just and legal obliga-
tions *without payment.* They are not the offspring at all of an
uncalculating humanity. They had their *origin* in the
policy of commercial states, in stimulating enterprize to the
advancement of trade, and where *real misfortune* overtook his
adventures, and his means were *honestly* applied, according
to existing *legal* dispositions ; the shackles are struck from
the limbs of the debtor ; a spunge put upon his debts ; and
with fresh hopes and tutored weariness, his bark is once
more set adrift upon the currents of trade. Not that this is
*just* towards the creditors, but consonant to the policy of the
trade laws, which, if they did not secure the attainment of
full justice, yet exacted the nearest approach to it, by requir-
ing an unrestricted surrender *to the law,* of his effects, that it
might distribute them *ex equo et bono,* to the creditors.

Though bankrupt laws have existed for centuries, not a
case has been adduced from the jurisprudence of those
countries, showing the discharge of a bankrupt, *who had
made a distribution of his own effects.* And no such case can
be adduced where opposition has been made to such dis-
charge, because such a procedure conflicts with the most
important principle upon which such laws are instituted, etc.

If the legislature, after removing the disability of non-
residents, had designed to institute discriminations between
them and citizens, it was indispensible that it should have
modified some of the provisions of the act of 1808, and
adapted them to the circumstances of strangers. It is evi-
dent that this has not been done, and this fact *per se,* con-
stitutes the proof, that no such discrimination was designed,
and surely if the *legislature* have not done it, the *courts* are
without the power to do it, etc.

The 11th section of the act of 1808, 1 *Moreau's Digest,* 57,
exacts of all debtors prior to their discharge, a certain oath,
which contains among other declarations, the following :

" I have not directly or indirectly sold, or otherwise disposed
of in trust, or concealed any part of my lands, money, goods,
stocks, debts, securities, contracts or estates, whereby to
secure the same, or to receive or expect any profit or advan-
tage therefrom." Now how is it possible that the insolvent
could take the oath under the facts which he himself has
put upon the record ? From his own schedule (already veri-
fied by his oath) he shows, that after his failure, and within
a few days of his leaving Mobile, and of his arrest here, he
transferred by deeds of trust to W. R. Hallett, to secure Fon-
taine & Freeman, and by a deed of mortgage to Richardson,
the entire of his immense real estate ; and to the same indi-
vidual, and to Andrews & Brothers of this city, he transferred
every thing available from his port folio, being together
upwards of eight hundred thousand dollars, and exceeding
by several hundred thousand dollars in his assignments, the
aggregate of all the debts and liabilities he thus attempted to
secure, and secured the excess or surplus wholly to himself.

Under another branch of the argument, it will be made
manifest, that these very assignments, with the resulting
trust and benefit to the debtor, which they contain, are as
much reprobated by the laws of Alabama as by the laws
here, and that the oath exacted there of insolvents to secure
their discharge from imprisonment, is almost identical with
our own ; that perjury in obtaining the discharge there as
here, deprives one forever of the benefit of the insolvent laws,
and hence it results, that if the insolvent had in Alabama,
taken the oath prescribed by the insolvent laws of that state,
he could have been convicted of perjury there upon the
very fact he has put upon the record here, and would have
been thereby doomed to perpetual imprisonment, because the
insolvent laws alone could release him, and he would be
deprived of them, and no release would remain to him other
than through the payment of his debts, or the leniency of
his creditors, etc.

But be this as it may, that no conscientious man could
take the oath prescribed by our laws under the facts is clear ;

ought the judge of the first instance permit him to take it, when to the judge's knowledge it was false ? There may possibly be differences of opinion as to this, but none whatever as to the duty of the judge, after the false swearing has been made. As a conservator of the peace and public morals of the state, he is bound to take official notice of a crime committed in his presence. The moment the insolvent lifted his lips from such a corrupt and abominable swearing, the parish judge must have ordered him into custody, and turned him over to the criminal jurisdiction for prosecution ; and the perjury being established here as in Alabama, he has lost all benefit of the insolvent laws, etc.

There being then no power of judicial legislation in the court, to vary the oath which the insolvent must take prior to discharge, it being clear that residents and non-residents have to take the same oath, and that the law is without discrimination in other respects ; nothing would seem more conclusive, than that each are to receive their discharges on the same conditions, if discharged at all ; and hence, as it is not pretended that the insolvent would be entitled to his discharge, under the facts, if he were a citizen of this state, the fact of his non-residence raises up no distinguishing exception in his favor, over citizens of Louisiana, nor guarantees to him that most inestimable of all privileges awarded to a debtor ; a discharge from imprisonment and his debts. And were our laws once relaxed in these particulars, and discriminations made in favor of non-residents, by which they could dispose of their assets, fraudulently or otherwise, (for this would not be material, if the investigation is limited to acts done in Louisiana) in other States, and then come here and obtain their discharges, one of two results would be likely to follow : either that creditors would desist altogether from the pursuit of non-resident, fraudulent and absconding debtors, after they had reached this *ultima thule* of safety, or our neutral judicatures, would be forever clogged and engrossed with foreign litigations. The inappreciable favor of being forever absolved from ones precedent debts, would

prove a gilded bait, to tempt debtors to forge the brief im-
prisonment attendant upon a course of justicement in cases
of insolvency, etc.

EASTERN DIST.
Jan. 1838.

ANDREWS.
vs.
HIS CREDITORS.

(*By the Reporter.*  It will be seen by the opinion of the
court, that the cause was decided upon the first point made
by the counsel for the opponents.  Thence it is not deemed
necessary to present even a synopsis of the elaborate argu-
ment made by the counsel upon the facts and law involved
in his other points.  The points themselves, with the
authorities cited, follow)—

2. If the *lex fori*, or law of Louisiana, be not the law
of the whole case, it is the law of all such parts of it, in
which the *lex loci*, or law of Alabama, has not been shown
to be different.  See 1 *Martin, N. S.*, 522, 528.  3 *Martin,
N. S.*, 149.  5 *Martin, N. S.*, 179.

The court expressed its assent to this proposition, and the
counsel proceeded to show the various provisions of the
laws of Louisiana, and their bearing upon the facts in the
record.

The only differences attempted to be shown between the
two laws, consists in this, that the laws of Alabama tolerate
preferences given by a debtor to one creditor over another.
In all other respects then, the laws of Louisiana govern the
case, and he cited as follows : 1 *Moreau's Digest*, 570, *Act of
1808, sections* 1, 2, 6, 11, 17 *and* 19.  *Also, as acts in pari
materiæ,* 2 *Moreau's Digest, Act* 20, *Feb.* 1817, *title and sec-
tions* 20, 21, 22, 23, 24, 25 *and* 41.  *Civil Code, articles* 1979,
1980, 1983, 1984.  1 *Martin,* 159.  11 *Martin,* 730.  4
*Louisiana Reports,* 55, *and* 8 *Louisiana Reports,* 319.

3. The various assignments of property by the insolvent
in Alabama, are fraudulent and void under the *lex loci*, or
laws of that state.

The debt to Richardson of one hundred thousand dollars,
originated in usury, and the mortgage deed of the real
estate, and collaterals from the port folio given to secure it,
are tainted with the same corruption and void also.  See
*Aikins's Alabama Digest, 2d edition, page* 437, *sections* 1, 2, 3
and 4.

60

The deeds of trust to secure Fontaine & Freeman, and the excessive transfers of collaterals to them, and to Andrews & Brothers of this city, to secure imputed debts and liabilities to them, by agreements which destinate the surplus to the insolvent himself, constitute their contracts, securing resulting trusts and benefits to the debtor, and render them fraudulent and void under the laws of Alabama, and the reservation of the control which the debtor has made for himself over the property conveyed by the trust, deeds, and the long delay prescribed for the performance of the trusts ; also avoid them for fraud, as designed and tending to " hinder, delay and defraud creditors." See *Aikins's Alabama Digest*, 2d edition, page 207, section 2, title *Frauds and Fraudulent Conveyances*. For *Insolvent's Oath, Ibid.* 226, section 2 ; and for *Penalty for False Swearing in a Deprivation of the Benefits of the Insolvent Law of Alabama*, see *Ibid.*, 229, section 11, title *Insolvent Debtors*.

Though a consideration be ample and *bonâ fide* paid, and legal notice given, yet if the contract was made to " hinder, delay or defraud creditors," it is void : Agnes *vs.* Moore, 2 *Stewart's Alabama Reports*, 336.

Assignments in trust, with a reservation to the debtor, fraudulent and void. 4 *Dallas's Reports*, 76. 14 *Johnson's Reports*, 464. 15 *Johnson's Reports*, 571. 5 *Cowan's Reports*, 547, 566, 579, 580. 2 *Kent's Commentaries*, 420–1. 1 *Stewart & Porter's Alabama Reports*, 154, 156.

4. The insolvent has committed sundry fraudulent acts in Louisiana, since his arrest, and in contemplation of taking the benefit of the insolvent laws of Louisiana.

This point involved and received from the counsel, an elaborate examination into the facts of the case, contesting especially, the fullness, accuracy and verity of the two schedules presented by the insolvent, and maintaining their discrepancy with the insolvent's mercantile books, and the documentary testimony in the cause.

*Bullard, J.*, delivered the opinion of the court.

The appellee, Solomon Andrews, a merchant of Mobile, in the state of Alabama, having been arrested in this city, at

the suit of the Planters' and Merchants' Bank of the same <span>Eastern Dist.</span>
place, applied to the parish court for his discharge, under the <span>*Jan.* 1838.</span>
act of 1808, for the relief of honest and unfortunate debtors <span>ANDREWS</span>
in actual custody.   The bank, as well as other creditors of <span>*vs.*</span> <span>his creditors.</span>
the insolvent, made opposition to his discharge, and in pur-
suance of the provisions of that act, filed charges of fraud,
founded on various acts and transactions, some of which took
place in Alabama and some in this city, within the three
months preceding his arrest.   The verdict of the jury having
been in favor of the insolvent, and followed by a judgment
ordering his discharge, on executing an assignment of his
property and taking the oath prescribed by the statute, the
opposing creditors prosecute the present appeal.   The case
has been elaborately argued in this court, both upon the
facts and the questions of law which it involves.

The attention of this court has been chiefly directed to a
question of law, which is brought to our view by a bill of
exceptions, and which appears to us to cover most of the
ground of controversy.

It appears by that bill of exceptions, that when the jury
was about to retire, the counsel for the opposing creditors
prayed the court to charge them : " that, if they believed from
the evidence, Solomon Andrews had in contemplation the
taking the benefit of the act for the relief of insolvent
debtors in actual custody, at any time within three months
previously to his arrest and imprisonment, assigned or made
over any part of his estate or effects, either in trust for
himself, or as a donation or gift, or mortgaged his property,
or confessed a judgment, or otherwise disposed of the same,
or given an undue preference to one of his creditors over
others, then, and in such case, said Andrews was not
entitled to the benefit of the said law, whether said acts
were done or committed in Alabama or in Louisiana," but
the court refused to give such a charge, and added as a qua-
lification, " that those of such acts which were committed in
Alabama, and which are not considered as fraudulent by
the laws of that state, could not be regarded as an objection
or obstacle to the said Andrews being admitted to the benefit
of the insolvent laws of the state of Louisiana."

The case certainly presents a novel spectacle : that of a contest between debtor and creditor, both residents of another state, engaged, as it were, in a struggle upon neutral ground, the one party seeking the recovery of an acknowledged debt, in the tribunals of this state, according to our forms of proceeding ; the other claiming not merely a release from imprisonment, but the entire exemption hereafter from all liability on account of those debts, on executing an assignment of a remnant of his property, remaining after having disposed of the greater part of his means to satisfy a class of favored creditors in the same state, and some of them residing here.  On the one hand it is contended, that those contracts which took place in Alabama, between the debtor and a part of his creditors, must be judged of according to the laws of the place where they were entered into and consummated ; that if valid and binding there, they are so here to all intents and purposes ; and on the other it is urged, that although the debtor might well favor certain creditors by the laws of Alabama, and that such contracts must have their effects, according to the local law, yet, when the debtor asks in our tribunals the protection of our bankrupt laws, he must bring his case clearly within their provisions, and that he is not entitled to their benefits, if, within three months preceding his discomfiture, he has voluntarily favored one class of his creditors to the prejudice of others.

Contracts entered into in other states, as it relates to their validity, and the capacity of the contracting parties, are to be tested in this state, by the law of the place where they are made.

So, contracts made in another state, in accordance with its laws, will not be declared null by our courts, because such contracts would not be valid accord-

We find no difficulty in assenting to the proposition, that contracts entered into in other states, as it relates to their validity and the capacity of the contracting parties, are to be tested here by the *lex loci celebrati contractus*.  This court has often recognized that doctrine as well settled.   When a contract is entered into in Alabama, in conformity to the local law, to have its effects and execution there, it is clear the courts of this state cannot declare its nullity, on the ground that such a contract would not be valid according to our system of jurisprudence ; such would be the case even if one of the contracting parties, or both, were not citizens of Alabama.   If Andrews, for example, had been a citizen of Louisiana, having creditors and effects both here and in Alabama, and had gone over to that state, and transferred a

portion of his property there to certain preferred creditors, such a transaction, as to its legality, would depend upon the law of Alabama. But if such citizen of Louisiana should immediately afterwards seek to avail himself of the benefit of our insolvent laws, a different question would present itself. Although our courts might not be authorized to annul such contracts, as to their effects between the parties, yet they might well inquire, whether it was not the intention of the Legislature to afford the protection of the insolvent laws to such only as shall have abstained from giving an undue preference to certain creditors, in derogation of that vital principle of our system, that the property of the debtor forms the common pledge of his creditors, and although such preferences may be tolerated by the *lex loci*. If the legislature has thought proper to declare such a condition as one upon which shall depend the right to claim the benefit of the insolvent laws, which it is not denied they had an unquestionable right to do, then there is an end to the argument, unless it can be shown that the mere residence of the party in another state dispenses him from a compliance with the condition. The correctness of the charge depends, therefore, upon the solution of this question.

As it was originally enacted, the act of 1808 permitted only such as had resided one year in the territory to avail themselves of its provisions. When that restriction was removed by a subsequent act, in 1822, no modification was made of the general provisions of the act, which might be construed to place strangers upon a more favorable footing.

The same oath is required of all who apply, whether citizens or strangers. The 17th section, which defines the acts which shall, if established, deprive the debtors of the benefits of this law, and which are set forth nearly, if not literally, in the very words of the charge asked for, purports to be equally applicable to all. The law contemplates that all the property and rights of the insolvent, wherever situated, shall be assigned for the common benefit of all his creditors, whether present or absent.

EASTERN DIST.
*Jan.* 1838.

ANDREWS
*vs.*
HIS CREDITORS.

ing to the laws of Louisiana. They will be enforced here, as regards the parties to them, when they are valid where made.

But where a debtor makes contracts and transfers of his property, to certain of his creditors in preference to others, in another state, which are not deemed fraudulent in regard to other creditors by its laws, and comes to Louisiana, where he is arrested by a creditor from that state, and claims the benefit of our insolvent laws: *Held*, that his case must be governed by the provisions of these laws, which grant a *discharge* to the debtor who is not convicted of fraud. Such contracts and transfers being deemed in fraud of creditors by our insolvent laws, will be so declared by our courts, and their protection denied to the insolvent.

If by the statute, strangers and citizens are placed on the same footing, the question resolves itself into this: whether a citizen of this state, invoking, as the insolvent in this case does, the protection of the act of 1808, who should appear to have given an undue preference to any of his creditors any where, within the three months preceding his arrest, may not be repelled by his other creditors, to whom he offers to surrender only a remnant of his means; although such contracts may have been entered into, and consummated in a state where such partial assignments may be tolerated by the usages and laws of the place. Could he be permitted at the same time to avail himself of his right to favor a part of his creditors, under the law of the place where such partial distribution is permitted, and in virtue of our insolvent laws, be forever released from all obligation to pay the rest of his creditors, on making an assignment of such part of his effects as he has chosen to retain? Such a doctrine appears to us equally at war with the words of the statute, and the general policy of the laws.

But it is said, that if we put such a construction upon the act, we give an extra-territorial operation to our law, by treating as null, contracts sanctioned by the *lex loci*, and regarding as fraudulent those transactions which were in fact not only legal, but meritorious. To this it may be answered, that we leave those contracts undisturbed, and take cognizance of them no further than as the voluntary disposition of property in reference to our own insolvent laws, when the insolvent seeks an extraordinary remedy to which he would not be entitled by the law of his domicil ; that of being declared exonerated from the payment of his remaining debts, on the assignment of the remainder of his effects. We look at them only so far as they form a condition, upon which depends his right to be discharged, and consequently as pertaining to the remedy sought for.

It is further urged, that the acts spoken of in the statute, must be shown to have been done in contemplation of taking the benefit of the act, and that it cannot be supposed that Andrews had in view the bankrupt laws of Louisiana,

when he made these assignments in Alabama. Taken in their literal sense, it is certainly difficult, if not impossible to give any legal effect to these expressions, without resorting to the extravagant supposition, that the insolvent had procured his own arrest, by colluding with some one creditor, and that he had done other acts which would tend to defeat his own project. But the charge prayed for, does not omit those expressions, and it is not now our duty to inquire, in what sense they are to be understood, and whether by the general principles of our law, all contracts of the kind spoken of, within three months preceding insolvency, between debtor and creditor, be not presumed to be in fraud of other creditors.

Having taken this view of the law of the case, so far as it relates to the instructions to be given to the jury, we forbear to examine other questions of fact and of law which have been argued, and to inquire whether the verdict be supported by the evidence.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be reversed, and the verdict set aside ; and it is further ordered, that the case be remanded for a new trial, with directions to the judge not to decline charging the jury, as prayed for by the counsel for the appellants, and that the appellee pay the costs of the appeal.